**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| **ANTONIO ROZZI** and **TERAE HILL**,<br>Plaintiffs,<br>v.<br>**DREAM FINDERS HOMES, LLC**,<br>Defendant. | Case No.<br>Hon. |

## COMPLAINT AND JURY DEMAND

Plaintiffs Antonio Rozzi and Terae Hill, by and through their attorneys, for their Complaint against Defendant, Dream Finders Homes, LLC, states as follows:

## INTRODUCTION

1. In early 2026, Jonathan Neil, the Operations Manager for Dream Finders Homes' Charlotte division, discharged Antonio Rozzi, a Hispanic Construction Manager, and Terae Hill, a Black Warranty Manager.

2. Dream Finders told Rozzi his discharge was "a numbers thing." Yet construction continued in his assigned community, and the company kept a white Construction Manager with less tenure whose inspection failures had cost it significant money.

3. Dream Finders cited poor performance when it discharged Hill, even though he led the company's Warranty Managers nationwide on key performance measures.

4. Dream Finders' stated reasons were pretextual. The company discharged Rozzi because he is Hispanic and Hill because he is Black. Plaintiffs seek relief for discriminatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

## PARTIES

5. Plaintiff Antonio Rozzi is Hispanic and worked for Dream Finders as a Construction Manager II in its Charlotte, North Carolina division.

6. Plaintiff Terae Hill is Black and worked for Dream Finders in its Charlotte division, most recently as its Warranty Manager.

7. Defendant Dream Finders Homes, LLC ("Dream Finders") is a Florida limited liability company with its principal office in Jacksonville, Florida. It conducts homebuilding operations in the Charlotte area and employed both Plaintiffs in its Charlotte division.

8. Dream Finders employed at least 15 employees for each working day in at least 20 calendar weeks in the current or preceding calendar year and was an employer within the meaning of 42 U.S.C. § 2000e(b).

9. At all times relevant to this action, Defendant conducted business, maintained facilities, and derived substantial revenue in the State of North Carolina and is subject to the jurisdiction and venue of this Court.

10. Defendant may be served through its registered agent, located at 15720 Brixham Hill Avenue #300, Charlotte, NC, 28277.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over Plaintiffs' claims arising under Title VII as they present federal questions pursuant to 28 U.S.C. § 1331 and § 1343(a).

12. This Court has personal jurisdiction over Dream Finders because it operated its Charlotte division in this District, employed Plaintiffs through that division, and the claims arise from that employment.

13. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiff Rozzi filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 1, 2026, Charge No. 430-2026-03241, alleging discriminatory discharge. He received the EEOC's Notice of Right to Sue on September 28, 2026 and brings his Title VII claim within 90 days of receipt.

15. Plaintiff Hill filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 1, 2026, Charge No. 430-2026-03242, alleging discriminatory discharge. He received the EEOC's Notice of Right to Sue on August 25, 2026 and brings his Title VII claim within 90 days of receipt.

## FACTUAL ALLEGATIONS

### A. Antonio Rozzi

16. Rozzi worked as a Construction Manager II in the Charlotte division. He was the only Hispanic Construction Manager in that division.

17. Rozzi maintained strong survey scores and positive construction cycle metrics. Before his discharge, Dream Finders had neither disciplined him nor raised any performance concerns with him.

18. On or about March 27, 2026, Dream Finders called Rozzi into its Charlotte branch office and told him that his employment was terminated effective immediately.

19. Jonathan Neil made the decision to terminate Rozzi's employment.

20. Dream Finders told Rozzi the decision was "a numbers thing" tied to available construction starts and neighborhoods.

21. Rozzi told Dream Finders that his performance metrics were strong and that construction work and starts remained active in his assigned community, originally called Citadel and later called Townes at Ribbon Walk. Dream Finders gave him no further explanation.

22. Dream Finders retained a white Construction Manager in the Charlotte division who had less tenure than Rozzi and whose inspection failures had cost the company significant money.

23. After Rozzi's termination, Dream Finders replaced his role as Construction Manager for the Townes at Ribbon Walk community with a white Construction Manager who was less qualified for the role.

**B. Terae Hill**

24. Hill joined Dream Finders in March 2022 as a Builder in the Charlotte division. Dream Finders promoted him to Area Manager. He became Purchasing Manager at the end of 2022 and Warranty Manager in October 2024.

25. As Purchasing Manager, Hill implemented measures that reduced construction costs by approximately $25,000 per home across the division.

26. Hill was the Charlotte division's only Warranty Manager. He maintained the lowest warranty spending and the fastest turnaround times to closing among Dream Finders' Warranty Managers nationwide.

27. Hill also served as Safety Manager and oversaw quality-control inspections across the Charlotte division. His assignments included communities in Wingate and Kannapolis, North Carolina, and York and Richburg, South Carolina.

28. During Hill's tenure overseeing safety, the Charlotte division went through four safety inspections without a citation, fine, or violation.

29. Hill and Chavous Nichols, the Director of Construction, were the only Black managers in the Charlotte division. Hill reported to Nichols while serving as Warranty Manager and had no discipline or performance concerns under Nichols.

30. In approximately January 2026, Nichols resigned. On information and belief, concerns about race-related treatment within Dream Finders, and specifically Jonathan Neil, contributed to his resignation. Hill then began reporting to Jonathan Neil, the new Operations Manager.

31. After Nichols resigned, Hill was the only remaining Black manager in the Charlotte division. Within approximately two months of becoming Hill's supervisor, Neil accused Hill of "cheating" on his warranty metrics and began closely scrutinizing his work. Neil formally disciplined Hill over a single minor issue despite Hill's clean disciplinary record.

32. On information and belief, Dream Finders did not subject similarly situated non-Black managers in the Charlotte division to comparable scrutiny or discipline.

33. In March 2026, Neil discharged Hill, the Charlotte division's only remaining Black manager. Neil cited alleged failures to return customer calls and unspecified customer complaints. Before discharging Hill, Dream Finders had not meaningfully raised those issues with him.

34. Hill had no disciplinary history before Neil became his supervisor and led Dream Finders' Warranty Managers nationwide in controlling warranty spending and closing warranty items promptly. Soon after taking over, Neil accused Hill of "cheating" on those metrics and formally disciplined him over a single minor issue. Dream Finders used the alleged performance deficiencies as a pretext to discharge Hill because he is Black.

## COUNT I:
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e *et seq.* - RACE DISCRIMINATION

35. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

36. Each Plaintiff was qualified for his position and was performing satisfactorily when Dream Finders discharged him.

37. Dream Finders' stated reason for discharging Rozzi was pretextual. Construction remained active in his assigned community, and Dream Finders retained a less-tenured white Construction Manager whose inspection failures had cost the company significant money. Rozzi's race, Hispanic, caused Dream Finders to discharge him.

38. Dream Finders' stated reason for discharging Hill was pretextual. Hill led the company's Warranty Managers on key performance measures, had no disciplinary history before Neil became his supervisor, and had not been meaningfully advised of the customer issues Neil cited in firing him. Hill's race, Black, caused Dream Finders' decision to discharge him.

39. The above-pled actions of Defendant constitute race discrimination in violation of Title VII.

40. The actions of Defendant in subjecting each Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiffs harm, and/or were committed with reckless disregard for the harm caused to Plaintiffs, and were in derogation of their federally protected rights.

41. Plaintiffs' race were the basis for the decisions by Defendant to subject them to the adverse actions as pled above.

42. As a direct and proximate result of Defendant's adverse actions, Plaintiffs have suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

## COUNT II:
## VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION

43. Plaintiffs incorporate by reference paragraphs 1 through 34 of this Complaint.

44. Each Plaintiff had an employment contract with Dream Finders under which he performed work in exchange for compensation.

45. Dream Finders intentionally interfered with Rozzi's right to make and enforce his employment contract on equal terms by discharging him because of his Hispanic ancestry or ethnic characteristics. But for that discrimination, Dream Finders would not have discharged Rozzi.

46. Dream Finders intentionally interfered with Hill's right to make and enforce his employment contract on equal terms by discharging him because he is Black. But for that discrimination, Dream Finders would not have discharged Hill.

47. As a direct and proximate result of Defendant's adverse actions, Plaintiffs have suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and award the following relief to each Plaintiff as available under the applicable law:

a. A declaratory judgment that Defendant violated Plaintiffs' rights under Title VII and 42 U.S.C. § 1981;

b. A grant of monetary judgment in favor of Plaintiffs and against Defendant awarding all economic, liquidated, compensatory and punitive damages available under the law;

c. Attorneys' fees and costs incurred by Plaintiffs in filing this action to the extent allowed by law;

d. Award of pre- and post-judgment interest to Plaintiffs on all damages; and

e. Any other legal or equitable relief the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues so triable

Date: November 20, 2026

Respectfully submitted,

*/s/ Ethan C. Goemann*
Ethan C. Goemann (NC Bar No. 50731)
**SOMMERS SCHWARTZ, P.C.**
119 East Court Square, Suite 205
Decatur, GA 30030
Tel: 248-746-4050
egoemann@sommerspc.com

*Attorney for Plaintiffs*